UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:                                              Case Number: 16-10249-7

SCOTT G. PULVERMACHER
and JEAN M. PULVERMACHER,

        Debtors.

---

HELLENBRAND GLASS, LLC,

        Plaintiff,
v.                                                  Adversary Number: 16-25

SCOTT G. PULVERMACHER
and JEAN M. PULVERMACHER,

        Defendants.

---

## DECISION

### I.   Statement of Procedural History

On January 29, 2016, Debtors/Defendants Scott G. and Jean M. Pulvermacher (collectively the "Pulvermachers") filed a voluntary Chapter 7 petition. On April 21, 2016, Hellenbrand Glass, LLC ("Hellenbrand") filed a Complaint seeking determination that a debt evidenced by a state court judgment is nondischargeable under 11 U.S.C. § 523(a)(4). The Pulvermachers answered the Complaint. The parties filed a Stipulation agreeing that $15,457.03 was nondischargeable. Despite the fact Jean Pulvermacher was not a defendant in the state court action, she has also stipulated to nondischargeability. The adversary proceeding asserts marital property, including her interest therein, is available for satisfaction of the debt. The

parties dispute whether the treble damage portion of the debt or the costs and fees are dischargeable. The parties also dispute whether payments made on the state court judgment should be applied first to the portion of the judgment stipulated to be nondischargeable. The parties agreed there were no material issues of fact and the Court ordered briefs.

**II.     Statement of Facts**

Debtor Scott G. Pulvermacher was the owner and managing member of Property Medix, LLC ("Medix"), a Wisconsin limited liability company. Hellenbrand and Medix entered into a subcontract agreement whereby Hellenbrand agreed to sell Medix, and Medix agreed to purchase from Hellenbrand, certain windows, doors, and related materials to be used by Medix to improve the real property located on Baker Road in Madison, Wisconsin (the "Premises"). Medix was the prime contractor on the project to improve the Premises.

Medix failed to pay for these materials. Hellenbrand filed suit in Dane County Circuit Court alleging a claim for theft by contractor under Wis. Stat. § 779.02(5) (the "Circuit Court Case"). In addition, Hellenbrand sought damages for intentional theft under Wis. Stat. §§ 895.466 and 943.20, including the amount Medix misappropriated plus treble damages, attorney's fees, costs, and prejudgment and postjudgment interest.

Hellenbrand, Medix, and Scott G. Pulvermacher entered into a Settlement Agreement intending to resolve all disputes between the parties regarding the Circuit Court Case. Hellenbrand agreed to dismiss the Circuit

Court Case without prejudice in exchange for payment of $17,979.74[1] by Scott G. Pulvermacher. In the event Pulvermacher missed a payment under the Settlement Agreement and failed to cure the default within 30 days, the parties agreed to an immediate entry of a judgment in favor of Hellenbrand in the amount remaining due and owing together with treble damages and all reasonable costs of investigation and litigation.

Scott Pulvermacher defaulted under the Settlement Agreement. The state court entered a judgment against him and Medix in the amount of $38,396.57, including treble damages, fees and costs for the investigation and litigation of the theft by contractor claim, and prejudgment and postjudgment interest. Jean Pulvermacher was not a defendant in the state court action, nor was she a party to the Settlement Agreement.

The Judgment provides that "[Hellenbrand's] motion for entry of judgment is **GRANTED** in its entirety, and [Hellenbrand] is granted judgment against [Scott G. Pulvermacher] . . . in the amount of $38,396.57. [Hellenbrand] is also entitled to collect statutory post-judgment interest and its additional attorneys' fees and other costs of investigation and litigation reasonably incurred to collect this Judgment."

In the present case, the parties stipulate:

(1) The sum of $15,457.03 was the amount owed under the Settlement Agreement minus payments made by Pulvermacher prior to default under that agreement plus prejudgment interest ("Initial Debt");

---

[1] Payable in equal monthly installments of $500 commencing with the first payment due on March 1, 2012, and continuing thereafter on the first of each month with interest accruing at 5% per annum.

(2) The Initial Debt is nondischargeable under 11 U.S.C. § 523(a)(4);

(3) A judgment in the amount of $38,396.57 was entered. This amount included the Initial Debt plus treble damages and statutory attorneys' fees and costs under Wis. Stat. §§ 779.02(5), 895.446, and 943.20 ("Judgment");

(4) The Pulvermachers paid Hellenbrand $17,575.33 prior to filing this Chapter 7; and

(5) The unpaid balance on the Judgment is $20,821.00.

## III.  Discussion

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. In accordance with section 157(a), the District Court for the Western District of Wisconsin has referred all of its bankruptcy cases to the Bankruptcy Court for the Western District of Wisconsin. W.D. Wis. Admin. Order 161 (July 12, 1984). A proceeding for determination of dischargeability is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

### 11 U.S.C. § 523(a)(4)

Whether a debt is nondischargeable in bankruptcy is a matter of federal law governed by the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279 (1991). The creditor seeking to establish a nondischargeable debt under section 523(a)(4) bears the burden to establish each element thereunder by a preponderance of the evidence. *See id.* at 287; *see also Green v. Pawlinski (In re Pawlinski)*, 170 B.R. 380, 388 (Bankr. N.D. Ill. 1994).

Section 523(a)(4) provides as follows: "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt for fraud or

4

defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). To establish a nondischargeable debt for defalcation under section 523(a)(4), Hellenbrand must prove "(1) the existence of a trust; (2) the debtor is a fiduciary of that trust; and (3) fraud or defalcation by the debtor while acting as a fiduciary of the trust." *See Baytherm Insulation, Inc. v. Carlson (In re Carlson)*, 456 B.R. 391, 395 (Bankr. E.D. Wis. 2011).

The Pulvermachers stipulated, post-petition, that the Initial Debt of $15,457.03 is nondischargeable under section 523(a)(4). They also stipulated that the state court trebled this amount pursuant to Wis. Stat. §§ 895.446 and 943.20, and awarded attorneys' fees and other costs of investigation and the investigation costs reasonably incurred to collect on the Judgment.

## Preclusion

The Full Faith and Credit Act requires bankruptcy courts to recognize and give state court judgments the same preclusive effect the judgments would otherwise enjoy in state court. *Dollie's Playhouse, Inc. v. Nable Excavating, Inc. (In re Dollie's Playhouse, Inc.)*, 481 F.3d 998, 1000 (7th Cir. 2007). Section 1738 of title 28 bars federal courts from employing their own rules of preclusion. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481-82 (1982). Accordingly, federal courts must adhere to the rules chosen by the state from which the judgment is taken. *Id.* at 482. Here, the Judgment is a Wisconsin state court judgment. Therefore, Wisconsin law on preclusion applies.

Despite the best efforts of courts throughout Wisconsin to replace *res judicata* and collateral estoppel nomenclature with claim and issue preclusion,

legal professionals still use the former terms. *See Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723, 727 (1995). In *Northern States Power Co. v. Bugher,* the Wisconsin Supreme Court adopted the term "issue preclusion" to replace collateral estoppel. *Id.* "Issue preclusion refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in a prior action." *Id.* at. 550 (citation omitted).

Here, both parties analyze the nondischargeability issue under *res judicata*. This is incorrect. The United States Supreme Court in *Brown v. Felsen* determined res judicata does not apply in nondischargeability proceedings. *Brown v. Felsen*, 442 U.S. 127, 138-39 (1979). "Since *Brown*, 'there is a general rule that state court judgments do not have res judicata effect on nondischargeability actions under § 523.'" *Stoughton Lumber Co., Inc. v. Sveum (In re Sveum)*, Nos. 12-15483, 13-00002, 2013 WL 3404097, at *2 (Bankr. W.D. Wis. July 8, 2013) (Slip opinion) (quoting *Voss v. Pujdak (In re Pujdak)*, 462 B.R. 560, 569 (Bankr. D.S.C. 2011)).

Claim preclusion ensures the finality of decisions. *Brown v. Felsen*, 442 U.S. at 132. Under claim preclusion, "'a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings.'" *Northern States Power Co. v. Bugher*, 189 Wis. 2d at 550 (quoting *Lindas v. Cady*, 183 Wis. 2d 547, 558, 515 N.W.2d 458, 463 (1994)).

Hellenbrand asserts claim preclusion is proper because the amount of the debt is not at issue. Instead, the fundamental question is what preclusive effect does the Judgment have in this proceeding. The Pulvermachers stress that they stipulated only to the fact the Court need not make any further determination with respect to the underlying $15,457.03 debt, and the remaining treble damages and attorneys' fees fall outside the reach of claim preclusion. The following reasoning from the Supreme Court in *Brown* is helpful in explaining why claim preclusion does not apply in nondischargeability actions under section 523:

> [P]etitioner [debtor] readily concedes that the prior decree is binding. That is the cornerstone of his claim. He does not assert a new ground for recovery, nor does he attack the validity of the prior judgment. Rather, what he is attempting to meet here is the new defense of bankruptcy which respondent has interposed between petitioner and the sum determined to be due him.

*Brown v. Felsen*, 442 U.S. at 133. The Supreme Court went on to explain that even if the state court extended concurrent jurisdiction over the nondischargeability issue, it is unreasonable for creditors to shoulder the burden of raising and prosecuting nondischargeability actions in state court in the possibility that "a debtor might take bankruptcy in the future." *Id.* at 135. "In many cases, such litigation would prove, in the end, to have been entirely unnecessary. . . ." *Id.* Thus, the Supreme Court in *Brown* concluded claim preclusion did not bar a bankruptcy court from looking beyond the record of the state court proceeding and the settlement documents terminating that

7

proceeding in order to decide whether the debt at issue was a debt for money obtained by fraud. *Id.* at 138-39.

In *Archer v. Warner*, the Supreme Court held section 523(a)(2)(A) applied to a debt embodied in a settlement agreement that settled a creditor's earlier claim "'for money . . . obtained by . . . fraud.'" *Archer v. Warner*, 538 U.S. 314, 316 (2003). In *Archer,* the parties settled a state court action for fraud in connection with the sale of a manufacturing company. *Id.* at 317. When the debtor failed to make the first payment under the settlement agreement, the creditor sued for payment in state court. *Id.* at 317-18. The debtor filed bankruptcy, and the creditor filed an adversary complaint to declare the settlement agreement debt nondischargeable under section 523(a)(2)(A). In affirming *Brown's* reasoning, the Supreme Court concluded a "debt embodied in the settlement of a fraud case 'arises' no less 'out of' the underlying fraud than a debt embodied in a stipulation and consent decree." *Id.* at 321.

At bedrock, in section 523 actions the inquiry centers on the conduct from which the primary debt arose. *Stoughton Lumber Co., Inc. v. Sveum (In re Sveum)*, 2013 WL 3404097, at *4 (citing *Star High Yield Inv. Mgmt. Corp., Inc. v. Schwartz (In re Schwartz)*, No. 07-30508, 2007 WL 3051865, at *3 (Bankr. S.D. Tex. Oct. 17, 2007)). Here, the Court need not "look behind" any state court action to determine the locus of the debt embodied in the parties' Settlement Agreement because the parties stipulated to the fact Hellenbrand commenced a state court action against Medix and Scott Pulvermacher for intentional theft

8

by contractor under Wis. Stat. § 779.02(5), and sought damages for intentional theft under Wis. Stat. §§ 895.446 and 943.20.

Wis. Stat. § 779.02(5) provides in relevant part:

> The proceeds of any mortgage on land paid to any prime contractor or any subcontractor for improvements upon the mortgaged premises, and all moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor, services, materials, plans, and specifications used for the improvements, until all the claims have been paid, and shall not be a trust fund in the hands of any other person. The use of any such moneys by any prime contractor or subcontractor for any other purpose until all claims, except those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under s. 943.20. If the prime contractor or subcontractor is a corporation, limited liability company, or other legal entity other than a sole proprietorship, such misappropriation also shall be deemed theft by any officers, directors, members, partners, or agents responsible for the misappropriation.

Wis. Stat. § 779.02(5).

Section 779.02(5) contemplates that when an owner pays money to a prime or subcontractor for improvements, that money creates a trust in the hands of that prime or subcontractor. *See Starfire, Inc. v. Dolata (In re Dolata)*, Case Nos. 08-32866, 09-2056, 2010 Bankr. LEXIS 3488, at *17 (Bankr. E.D. Wis. September 30, 2010). If the prime or subcontractor does not turn over those funds to the appropriate material supplier, such failure is a violation of section 779.02(5) punishable under Wis. Stat. § 943.20.

In relevant part, Wis. Stat. § 943.20 reads as follows:

9

>(1) ACTS. Whoever does any of the following may be penalized as provided in sub. (3):
>
>(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property.
>
>(b) By virtue of his or her office, business or employment, or as trustee or bailee, having possession or custody of money . . . of another, intentionally uses, transfers, conceals, or retains possession of such money . . . without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the owner.

Wis. Stat. §§ 943.20(1)(a) and (b). In addition, Wis. Stat. § 895.466 creates civil remedies to any person who suffers damages or loss under Wis. Stat. § 943.20.

Based on the Settlement Agreement, the Judgment and supporting documents, the Complaint and Answer in this adversary proceeding, and the Stipulation partially resolving this case, the Court may conclude the funds paid by the owners of the Premises to Medix created a trust for the benefit of Hellenbrand under Wis. Stat. §779.02(5). Wisconsin's "theft by contractor" provisions of section 779.02(5) create a trust fund for sums paid by a property owner to a contractor for the benefit of material suppliers. *See In re Carlson*, 456 B.R. at 395. This trust fund establishes the type of express statutory trust contemplated by 11 U.S.C. § 523(a)(4). *In re Carlson*, 456 B.R. at 395; *In re Polus*, 455 B.R. 705, 708 (Bankr. W.D. Wis. 2011); *see also In re Thomas*, 729 F.2d 502 (7th Cir. 1984) (applying Wis. Stat. § 779.16 theft by contractor for public improvements, which contains the same trust fund requirement for general contractors in private improvements).

Wisconsin bankruptcy courts have reached different conclusions about the degree of intent required under section 523(a)(4)'s third element. This Court's predecessors have concluded that at a minimum the lack of care exercised in handling trust funds under section 779.02(5) equates to something more than mere negligence akin to recklessness. *In re Polus*, 455 B.R. at 708 (Martin, J.); *see also Wadzinski v. Rieck (In re Rieck)*, 439 B.R. 698, 703 (Bankr. W.D. Wis. 2010) (Utschig, J.).

In the Eastern District, Judge McGarity relied on *Kraemer Bros., Inc. v. Pulaski State Bank*, 138 Wis. 2d 395, 406 N.W.2d 379 (1987), in concluding that Wisconsin case law applies a per se approach to violations of Wisconsin's theft by contractor statute. *In re Carlson*, 456 B.R. at 400.

Judge Pepper agreed with Judge Martin's reasoning and applied a "more than mere negligence" standard in *Ganther Constr., Inc. v. Ward (In re Ward)*, 417 B.R. 582, 592 (Bankr. E.D. Wis. 2009); *see also Starfire, Inc. v. Dolata (In re Dolata)*, 2010 Bankr. LEXIS 3488 (Bankr. E.D. Wis. September 30, 2010).

While the Court agrees with its predecessors' reasoning in *Polus* and *Rieck*, in the present case the Debtors have stipulated the Initial Debt is nondischargeable under section 523(a)(4). Accordingly, this Court need not address whether Hellenbrand satisfied section 523(a)(4)'s intent element. *See, e.g., Klingman v. Levinson*, 831 F.2d 1292, 1296 n.3 (7th Cir. 1987).

Wisconsin law on issue preclusion forecloses relitigation in a subsequent action of an issue of law or fact if two elements are present: (1) whether the issue was actually litigated in a prior action and was necessary to the

11

judgment, and (2) whether the application of issue preclusion would be fundamentally unfair. *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 772-73 (7th Cir. 2013).

The Pulvermachers argue claim preclusion does not apply because, in light of the Settlement Agreement, the state court matter never went to trial and the Judgment was entered against them only after they defaulted on the Settlement Agreement. This position ignores the underlying conduct that led to the state court action. *See In re Schwartz*, 2007 WL 3051865, at *3. In essence, the underlying fraud is twice removed from the debt. Hellenbrand's debt stems directly from a Judgment, which arose from a default under the Settlement Agreement that disposed of Hellenbrand's cause of action against Medix and Debtor Scott Pulvermacher for theft by contractor under Wis. Stat. § 779.02(5). The locus of Hellenbrand's debt stems from a failure to turn over trust funds, not from a default under the Settlement Agreement. Further, based on the Debtors' Answer to the Complaint, Debtors admitted that the funds paid by the owners of the Premises to Medix for the improvement materials constituted trust funds under Wis. Stat. § 779.02(5), and that these funds should have been allocated and paid to Hellenbrand or otherwise held in trust for Hellenbrand's benefit. In addition, Scott Pulvermacher consented to the entry of a judgment that included treble damages, costs, and fees. The Debtor appeared in the state court litigation and had the opportunity to litigate the matter. The parties voluntarily settled and resolved the matter and Debtor agreed to the entry of the Judgment.

The present case is similar to *In re Carlson* where (1) a defendant/debtor entered into a stipulation in the state case to settle a theft by contractor claim, (2) the settlement agreement awarded treble damages and attorney's fees if the defendant/debtor defaulted, (3) defendant/debtor defaulted on the settlement agreement and the plaintiff reopened the matter by affidavit, and (4) a money judgment was entered upon submission of the affidavit from plaintiff's counsel, which included costs and attorneys' fees which may be incurred in collection of the judgment. *In re Carlson*, 456 B.R. at 394. The *Carlson* court gave preclusive effect to the entire state court judgment concluding:

> [T]he underlying judgment arose under Wisconsin's theft by contractor statute, and while the stipulation did not admit intentional or wrongful conduct, Paragraph 2 admitted that the damages were "caused by [d]fendant's theft by contractor." Consequently, the defendant has admitted violation of the statute. *See Klingman v. Levinson*, 114 F.3d at 627 (holding stipulation waived defense of issue preclusion). The provisions of the statute meet all the elements for nondischargeability under 11 U.S.C. § 523(a)(4), the damages have been determined, and the defendant's debt to plaintiff is not subject to discharge.

*Id.* at 400-401; *see also In re Schwartz*, 2007 WL 3051865, at *3 ("In § 523 proceedings, the relevant inquiry focuses on the conduct from which the debt originally arose. Liable parties cannot erase the history of a debt's origin through a settlement and subsequent breaches of the settlement.").

The present case is also similar to *Klingman v. Levinson*, where the parties resolved a state court action through a consent decree. There, a plaintiff filed suit in the Circuit Court of Cook County against the trustee of her trust

13

alleging dissipation of assets. 831 F.2d at 1293. According to the stipulation, the trustee was to pay the plaintiff the original trust corpus plus "expenses incurred by [p]laintiff in maintaining this action, specifically including attorneys' fees, through the time of satisfaction of this judgment. . . ." *Id.* The trustee filed for bankruptcy. *Id.* The plaintiff filed an action to determine her judgment against the trustee was nondischargeable under section 523(a)(4) because it was a debt for fraud while acting in a fiduciary capacity. *Id.* The bankruptcy court found the trustee was precluded from relitigating the issue of defalcation because he had stipulated to the finding that he violated his fiduciary duty, and awarded attorneys' fees. *Id.* at 1294. Both the district court and Seventh Circuit affirmed.

In addition, the court concluded that when attorney fees are awarded in cases in which the underlying debt is later determined to be nondischargeable by a bankruptcy court, the attorney fees may also be nondischargeable. *Id.* at 1296. Accordingly, any attorneys' fees awarded by the state court which attach to primary debts found nondischargeable by this Court are also nondischargeable.

As described, the Debtors have stipulated not only to the $15,457.03 being nondischargeable under 11 U.S.C. § 523(a)(4), but also to the fact the state court action included a claim for theft by contractor under Wis. Stat. § 779.02(5). While Scott Pulvermacher did not admit in the Settlement Agreement that the damages were caused by his theft by contractor, the Debtors did stipulate to the fact that the funds paid by the owners of the

14

Premises to Medix for the materials supplied by Hellenbrand were trust funds under Wis. Stat. § 779.02(5). Further, section 779.02(5) extends liability to officers and members of a corporation or LLC that fail to transmit funds to a supplier. Since Medix was a Wisconsin limited liability company, such misappropriation also constitutes a deemed theft "by any officers, directors, members, partners, or agents responsible for the misappropriation." Wis. Stat. § 779.02(5). The Debtors do not challenge that this deemed theft is imputed to Scott Pulvermacher since he was the owner and managing member of Medix. Pulvermacher stipulated to nondischargeability of the Initial Debt under 11 U.S.C. § 523(a)(4). These facts together with the Stipulation satisfy the elements under section 523(a)(4). As in *Carlson*, the damages have been determined and the Debtors' remaining debt owed to Hellenbrand is nondischargeable.

The Judgment against Scott Pulvermacher was in the amount of $38,396.57. This amount credited any prejudgment payments to arrive at the Initial Debt. Payments made on the Judgment have also been applied to calculate the unpaid amount sought in this adversary proceeding. This Court entered an Order approving the parties' stipulation that $15,457.03 is nondischargeable under 11 U.S.C. § 523(a)(4). Following *Klingman*, "'[a]ncillary obligations such as attorneys' fees and interest may attach to the primary debt; consequently, their status depends on that of the primary debt.'" *Klingman v. Levinson*, 831 F.2d at 1296 (citation omitted). Further, "'[w]hen a debt evidenced by a note or other contract allowing attorneys' fees and other costs of

collection is determined nondischargeable, the attendant attorneys' fees and costs are similarly nondischargeable.'" *Id.* (citation omitted). Since the Judgment debt against Scott Pulvermacher is nondischargeable under section 523(a)(4), the award of attorneys' fees to which Mr. Pulvermacher stipulated to in the Settlement Agreement is also nondischargeable. *See id.* at 1297.

Turning to the treble damages and investigation costs, Wisconsin law contemplates an award of exemplary damages and investigation costs under Wis. Stat. § 895.446. In this proceeding, the parties stipulated to the fact that the state court entered a Judgment on July 15, 2013, in the amount of $38,369.57. The Judgment included the Initial Debt minus payments plus treble damages and statutory attorneys' fees, pursuant to Wis. Stat §§ 779.02(5), 895.446, and 943.20.  In *Hyrad Corp. v. Furrer (In re Furrer)*, Nos. 16-11090, 16-00049, 2016 Bankr. LEXIS 4456 (Bankr. W.D. Wis. Dec. 23, 2016), this Court recently addressed whether attorney's fees, exemplary damages, and investigation costs that attached to a primary debt found nondischargeable were also nondischargeable. *Id.* at *27-32.

In *Hyrad*, this Court joined its sister courts in finding punitive damages flowing directly from the primary debt nondischargeable reasoning it's "the debtor's conduct 'and not the nature of the liability' that determines whether a debt is excepted from discharge." *Id.* at 29. (quoting *Green v. Pawlinski (In re Pawlinski)*, 170 B.R. at 392); *see also Katahn Assocs. v. Wien (In re Wien)*, 155 B.R. 479, 489 (Bankr. N.D. Ill. 1993); *Leeb v. Guy (In re Guy)*, 101 B.R. 961, 997 (Bankr. N.D. Ind. 1988).

16

By applying the Supreme Court's reasoning in *Cohen v. de la Cruz*, 523 U.S. 213 (1998), this Court also concluded that section 523(a)(4) precludes a discharge of "any debt." *Hyrad Corp v. Furrer*, 2016 Bankr. LEXIS 4456, at *31. As the Supreme Court reasoned in *Cohen*, punitive damages constitute a "debt." *Cohen v. de la Cruz*, 523 U.S. at 218. Section 101(12) of the Bankruptcy Code defines "debt" as a liability on a claim. 11 U.S.C. § 101(12). A "claim" is defined simply as a "right to payment." 11 U.S.C. § 101(5)(A). And finally, a "right to payment" constitutes an enforceable obligation. *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 559 (1990).

Moreover, an award of punitive damages equates to an enforceable obligation "in which the creditor has a corresponding 'right to payment,' making such obligation nondischargeable." *Hyrad Corp. v. Furrer*, 2016 Bankr. LEXIS 4456, at *30. Treble damages are a form of punitive damages. *See In re Carlson*, 456 B.R. at 398 n.2 (citing *Tri-Tech Corp. of America v. Americomp Servs., Inc.*, 2002 WI 88, ¶24, 254 Wis. 2d 418, 646 N.W.2d 822).

Per the parties' partial Stipulation and this Court's Order approving the Stipulation, the Initial Debt of $15,457.03 is nondischargeable under section 523(a)(4). When a creditor demonstrates that treble damages arise from the same conduct warranting an award of attorney's fees, such treble damages are also nondischargeable.

Because the state court trebled the nondischargeable Initial Debt, the remaining $20,821.24 in treble damages and costs is intertwined with the Initial Debt in such a way that it stems directly from the conduct creating the

17

Initial Debt. Following the reasoning in *Cohen* and *Pawlinski*, the $20,821.24 constitutes an enforceable obligation stemming from a nondischargeable debt.

## IV. <u>Conclusion</u>

At its core, Wis. Stat. § 779.02(5) characterizes the failure to transmit funds to the supplier as "theft." The Debtors have stipulated $15,457.03 is nondischargeable under 11 U.S.C. § 523(a)(4). This amount is embodied in a Settlement Agreement between Medix and Scott G. Pulvermacher, which settled a state court action brought by Hellenbrand under Wis. Stat. § 779.02(5). This formed the basis for a consent Judgment. As in *Carlson*, the provisions of Wis. Stat. 779.02(5) satisfy the elements under section 523(a)(4).

Jean Pulvermacher was not a defendant in the state court action and was not a party to the Settlement Agreement, nor are there any facts that she was a member of Medix. The Complaint in this adversary proceeding asserts that marital property is available for satisfaction of the debt. Jean Pulvermacher is a party to the Stipulation in this case. She has stipulated that the Initial Debt is nondischargeable as to her and her spouse. Based on the allegations of the Complaint and the Stipulation, the Court finds that section 766.55(2)(b) governs and the amount determined herein as nondischargeable "may be satisfied only from all marital property[2] and all other property" of Scott Pulvermacher. In addition, section 524(a)(3)'s injunction against a creditor

---

[2] "The Code does not provide a definition of community property, but it does define community claim." *In re Grimm*, 82 B.R. 989, 991 (Bankr. W.D. Wis. 1988).

seeking recovery from after-acquired property as defined in section 541(a)(2) does not apply because the debt is nondischargeable under section 523.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

Judgment may be entered consistent with the findings of fact and conclusions of law contained herein.

Dated: March 31, 2017

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge